UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# ORIGINAL

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

       - v. -                               :

SAMUEL ANTONIO PINEDO-RUEDA,                :
       a/k/a "Antonio Pineda,"
       a/k/a "Samuel Pineda,"               :
SOLOMON ADELAQUAYE,
FRANK MUODUM, and                           :
CELESTINE OFOR ORJINWEKE,
       a/k/a "Sonny,"                       :

                                            :

       Defendants.                          :

- - - - - - - - - - - - - - - - - x

**INDICTMENT**

S5 12 Cr. 286

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: **MAY 0 9 2013**

## COUNT ONE

The Grand Jury charges:

1.    From at least in or about January 2012, up to and including in or about May 2013, in the Southern District of New York and elsewhere, SAMUEL ANTONIO PINEDO-RUEDA, a/k/a "Antonio Pineda," a/k/a "Samuel Pineda," SOLOMON ADELAQUAYE, FRANK MUODUM, and CELESTINE OFOR ORJINWEKE, a/k/a "Sonny," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2.    It was a part and an object of the conspiracy that SAMUEL ANTONIO PINEDO-RUEDA, a/k/a "Antonio Pineda," a/k/a "Samuel Pineda," SOLOMON ADELAQUAYE, FRANK MUODUM, and CELESTINE OFOR ORJINWEKE, a/k/a "Sonny," the defendants, and others known and unknown, would and did import into the United States from a

place outside thereof a controlled substance, in violation of Title 21, United States Code, Sections 812, 952(a), and 960(a)(1).

3.    It was further a part and an object of the conspiracy that SAMUEL ANTONIO PINEDO-RUEDA, a/k/a "Antonio Pineda," a/k/a "Samuel Pineda," SOLOMON ADELAQUAYE, FRANK MUODUM, and CELESTINE OFOR ORJINWEKE, a/k/a "Sonny," the defendants, and others known and unknown, would and did distribute a controlled substance, intending and knowing that such substance would be imported into the United States from a place outside thereof, and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 812, 959(a), and 960(a)(3).

4.    The controlled substance involved in the offense was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 960(b)(1)(A).

<u>OVERT ACTS</u>

5.    In furtherance of the conspiracy and to effect the illegal objects thereof, SAMUEL ANTONIO PINEDO-RUEDA, a/k/a "Antonio Pineda," a/k/a "Samuel Pineda," SOLOMON ADELAQUAYE, FRANK MUODUM, and CELESTINE OFOR ORJINWEKE, a/k/a "Sonny," the defendants, and others known and unknown, committed the following

2

overt acts, among others, in the Southern District of New York
and elsewhere:

a.   On or about February 1, 2012, in Accra,
Ghana, PINEDO-RUEDA and MUODUM met with two confidential sources
(hereinafter "CS-1" and "CS-2") working for the U.S. Drug
Enforcement Administration ("DEA").  The meeting was recorded.
At the meeting, CS-1 introduced PINEDO-RUEDA and MUODUM to CS-2.
CS-2 posed as a Colombian narcotics trafficker who was interested
in obtaining Afghan heroin to sell in New York City.

b.   At the meeting referenced in subparagraph
(a), above, PINEDO-RUEDA stated that he knew a heroin supplier
(the "Supplier") who had 50 kilograms of Afghan heroin, and that
PINEDO-RUEDA would speak to the Supplier about selling a portion
of that heroin to CS-2.

c.   On or about February 2, 2012, in Accra,
Ghana, PINEDO-RUEDA and MUODUM met with CS-1 and CS-2.  The
meeting was recorded.  At that meeting, PINEDO-RUEDA stated that
PINEDO-RUEDA could sell CS-2 one kilogram of the Supplier's
heroin.

d.   On or about February 2, 2012, after the
meeting referred to in subparagraph (c), above, in Accra, Ghana,
PINEDO-RUEDA, ADELAQUAYE, MUODUM, and ORJINWEKE met with CS-1 and
CS-2.  The meeting was recorded.  At that meeting, PINEDO-RUEDA
and ADELAQUAYE stated that ADELAQUAYE was responsible for

3

security at the international airport in Accra (the "Airport"), and ADELAQUAYE guaranteed that CS-2 could safely move heroin through the Airport.

   e. From on or about February 8, 2012 to on or about February 22, 2012, PINEDO-RUEDA spoke by phone with CS-2. CS-2 recorded the conversations. In those conversations, it was agreed that CS-2 would pay PINEDO-RUEDA $28,000 for one kilogram of heroin and that CS-2 would pay ADELAQUAYE $8,000 to guarantee the safe passage of the heroin through the Airport.

   f. On or about February 21, 2012, in Accra, Ghana, PINEDO-RUEDA, MUODUM, and ORJINWEKE met with CS-1 and a third confidential source working for the DEA ("CS-3"). The meeting was recorded. CS-3 posed as CS-2's New York City-based heroin distributor, who would transport the heroin to New York City for distribution in and around Manhattan and the Bronx.

   g. On or about February 22, 2012, in Accra, Ghana, PINEDO-RUEDA, MUODUM, and ORJINWEKE met with CS-1 and CS-3 at a restaurant. CS-1 and CS-3 then went to a room in a nearby hotel where MUODUM and ORJINWEKE provided CS-3 with approximately one kilogram of heroin. CS-3 gave ORJINWEKE $28,000 cash in exchange. The meetings were recorded.

   h. On or about February 25, 2012, in Accra, Ghana, PINEDO-RUEDA, ADELAQUAYE, MUODUM, and ORJINWEKE met with CS-1 and CS-3 at ADELAQUAYE's office in the Airport. The meeting

was recorded.  At that meeting, CS-3 said that he had hidden the kilogram of heroin inside his laptop computer.  ADELAQUAYE then instructed CS-3 to give the computer to an associate of ADELAQUAYE and told CS-3 that after CS-3 passed through the security checkpoint at the Airport, the computer would be returned to CS-3.  Also at that meeting, CS-3 gave ADELAQUAYE $6,000 cash to guarantee the safe passage of the heroin through the Airport.

       i.  At the meeting referred to in subparagraph (h), above, ADELAQUAYE agreed that CS-3 would wire an additional $4,000 to ADELAQUAYE after testing the heroin in New York City.

       j.  After the meeting described in subparagraphs (h) and (i), above, in Accra, Ghana, CS-3 passed through the security checkpoint at the Airport and CS-3's computer was then returned to him.

       k.  On or about March 7, 2012, ORJINWEKE received two wires sent by CS-3, at the direction of DEA personnel, from Manhattan, New York, each in the amount of $2,000, as payment for the heroin's safe passage through the Airport.

       l.  In or about early May 2013, in recorded meetings in Accra, Ghana, ADELAQUAYE, MUODOM, and ORJINWEKE discussed with CS-2 a plan in which CS-2 would provide ADELAQUAYE, MUODOM, and ORJINWEKE with 3,000 kilograms of cocaine valued at $25,000 per kilogram, in exchange for an amount of

heroin of similar value.  ADELAQUAYE, MUODOM, and ORJINWEKE told CS-2 that they could transport the heroin to the United States by airplane in multiple shipments of 25 kilograms each.

(Title 21, United States Code, Section 963.)

### FORFEITURE ALLEGATION

6.    As a result of committing the controlled substance offense alleged in Count One of this Indictment, SAMUEL ANTONIO PINEDO-RUEDA, a/k/a "Antonio Pineda," a/k/a "Samuel Pineda," SOLOMON ADELAQUAYE, FRANK MUODUM, and CELESTINE OFOR ORJINWEKE, a/k/a "Sonny," the defendants, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds they obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the narcotics violation alleged in Count One of this Indictment, including but not limited to a sum of money representing the amount of proceeds obtained as a result of the controlled substance offense for which the defendants are liable.

### Substitute Asset Provision

7.    If any of the forfeitable property described above in paragraph 6, as a result of any act or omission of SAMUEL ANTONIO PINEDO-RUEDA, a/k/a "Antonio Pineda," a/k/a "Samuel

6

Pineda," SOLOMON ADELAQUAYE, FRANK MUODUM, and CELESTINE OFOR
ORJINWEKE, a/k/a "Sonny," the defendants,

       a.   cannot be located upon the exercise of due
diligence;

       b.   has been transferred or sold to, or deposited
with, a third person;

       c.   has been placed beyond the jurisdiction of
the Court;

       d.   has been substantially diminished in value;
or

       e.   has been commingled with other property which
cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of the defendants up to the value of the above
forfeitable property.

     (Title 21, United States Code, Sections 853 and 970.)


_____
FOREPERSON

Preet Bharara
_____
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

### - v. -

### SAMUEL ANTONIO PINEDO-RUEDA,
### a/k/a "Antonio Pineda,"
### a/k/a "Samuel Pineda,"
### SOLOMON ADELAQUAYE,
### FRANK MUODUM, and
### CELESTINE OFOR ORJINWEKE,
### a/k/a "Sonny,"

**Defendants.**

### INDICTMENT

S5 12 Cr. 286

(21 U.S.C. § 963)

PREET BHARARA
United States Attorney

**A TRUE BILL**

_____
Foreperson

5/9/13 - Filed Sealed Superseding Indictment
OC   A/W issued.
Judge Gorenstein
USMJ.